**Richard M. KING, Appellant,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

**No. 7717.**

Court of Civil Appeals of Texas.

Amarillo.

May 15, 1967.

Rehearing Denied June 19, 1967.

Gordon, Gordon & Buzzard, Pampa, Ross N. Buzzard, Pampa, of counsel, for appellant.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, R. A. Wilson, Amarillo, of counsel, for appellee.

CHAPMAN, Justice.

This is a workman's compensation case. The parties will be referred to generally as in the court below. Richard M. King is the plaintiff-employee, Permian Corporation is the employer and Texas Employers' Insurance Association is the defendant-carrier.

Following the filing of plaintiff's first amended original petition and the taking of an exploratory deposition of plaintiff by defendant, the latter filed its motion for summary judgment. The motion was answered by plaintiff, with his affidavit attached thereto. Upon a hearing by the court of the stated motion, a judgment was summarily rendered for defendant. The judgment recites:

"* * * there came on for hearing, pursuant to prior setting, the defendant's motion for summary judgment founded on:

(a) the filed pleadings

(b) the plaintiff's deposition. and the plaintiff's reply thereto."

As we understand the record the reply was to the motion for summary judgment, with the plaintiff's affidavit attached thereto, and not a reply to the exploratory deposition. The sole ground upon which the judgment was summarily rendered was the trial court's conclusion that plaintiff failed as a matter of law to raise a fact issue as to "good cause" for not filing his claim with the Industrial Accident Board within the six months from date of injury, required by Section 4a of Article 8307, Vernon's Ann.Tex.Civ.St.

In his petition above mentioned plaintiff alleged, inter alia, that on or about the ninth day of December, 1964, while an employee of Permian Corporation, he sustained serious, painful and disabling personal injuries.

The summary judgment record shows plaintiff was a truck driver for Permian Corporation on Thursday, December 9, 1964, had worked his customary twelve-hour day from 7:00 a. m. to 7:00 p. m., had eaten his evening meal, and between 9:00 and 9:15 p. m. had gone to bed, tired. During the night he received a telephone call requiring him to take his large truck and go east of Spearman to help another truck out of the mud. He was on a dirt road, it was raining, and about five miles out of town he stuck his own truck four miles before he reached the point of his destination. While trying to work his truck out of the mud by backing and then going forward, and continuing that procedure, he became weak, dizzy, cold and sweaty, accompanied by some pain in his chest but not severe.

The next day he saw a Dr. Hackett in Spearman. After examining him, the doctor "* * * gave me a little—some kind

of little treatment there and told me he didn't think it was nothing—wasn't serious." He continued to feel weak and dizzy, stayed home the remainder of the week, and on Monday went to Dr. Ashby in Pampa. That doctor took an electrocardiogram and told him he " * * * had a little bit of heart ailment." He placed him in the hospital for ten days, telling him at the time that he needed the rest. The doctor told his wife that he " * * * had had a heart spasm, I believe is what—heart something like that."

"Q. A heart spasm?

"A. Spasm or something similar to that and told me I needed rest."

In January Dr. Ashby told him he had put in too many hours, should not have had to go back out the night he got stuck in the mud, that he should not over-exert any more because he had certain permanent damage to his heart.

■ At times the witness in the deposition questions appears to contradict himself and some of the issues were to some extent contradictory of his affidavit. This situation simply raises a fact question to be decided by the trier of the facts as to which part of the witness's testimony is true. Benoit v. Wilson, 150 Tex. 273, 239 S.W. 2d 792 (1951); Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); City of San Antonio v. Gonzales, 304 S.W.2d 429 (Tex.Civ.App.–San Antonio, 1956, writ ref'd n. r. e.). Considered in the most favorable light to him the record shows:

"Q. Yes. Now I want to know, did you—did Dr. Ashby tell you that you had sustained an injury on the job?

"A. Well, no.

"Q. All right—now is that why you didn't file a claim on compensation?

"A. Well, yes.

"Q. Now, do you know what causes heart attacks, or did you know then what causes heart attacks?

"A. No."

Dr. Ashby released plaintiff to go back to work and in February he was back on the same job, working twelve hours per day. Since he worked on a commission basis on his hauls of crude oil, he was also working at the same rate of pay, though not making as much money because he had quit rushing about his work. He had no physical pain, no "flare ups" and felt all right for the entire year.

The record shows plaintiff worked until January 29, 1966. At that time he was required to take a physical, which the company gives their employees every three years. After the physical he would go out to work and the company would not put him to work and would not tell him anything.

"Q. I see. Well, you suspected something was wrong, I take it?

"A. I knew there was something wrong because they kept stalling me off for about a week or ten days and didn't tell me nothing."

After this period he went to see his lawyer on February 10th or 11th. The claim to the Industrial Accident Board was then prepared on the 14th of February and received by the Board on the 17th.

■ The term "good cause" for not filing a claim for compensation within the six months period from date of injury required by Section 4a of Article 8307 is not defined in the statute. Because each late filing case must depend upon its own facts and the facts, as we have found them, have never been exactly the same in any two cases, precedent in decided cases is of little value except for general legal principles that are well established in this state, viz.

■ A good faith belief by the claimant that injuries are not serious, but are trivial, will constitute "good cause" for delaying the filing of a claim for compensation, but delay may not be excused unless the belief that the injury or condition was not serious would have been entertained by a reasonably prudent person in the same or similar circumstances. Texas Employers' Ins. Ass'n v. Clark, 23 S.W.2d 405 (Tex.Civ.App.-Eastland, 1929, writ dism'd); Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80 (1940); Harkey v. Texas Employers' Ins. Ass'n, 146 Tex. 504, 208 S.W.2d 919 (1948).

■ While ordinarily the question is one for the trier of the facts to determine, "* * * the evidence in a particular case may lead to lack of diligence as the only reasonable conclusion, in which event the question is to be decided as a matter of law." Texas Casualty Insurance Company v. Beasley, 391 S.W.2d 33 (Tex.1965).

■ While the Supreme Court of Texas in Texas Employers' Ins. Ass'n v. Portley, 153 Tex. 62, 263 S.W.2d 247 (1953) said, "* * * a mere statement by an injured person that he did not regard his injuries as serious will not raise a fact issue when the facts themselves put the matter *beyond the pale of reason* or beyond belief by a prudent person," we do not understand the court was extending the "reasonably prudent person in the same or similar circumstances" rule by the use of the phrase "beyond the pale of reason." (Emphasis ours). By the use of the conjunction "or" between the two phrases, we believe the court was simply joining words and phrases in a coordinate construction and expressing a unity of their ideas. We shall so consider the expression. We mention it only because appellant states one of the controlling questions to be: "Under the facts of this case, is appellant's claim that he did not know that he had sustained a reduction in earning capacity * * * beyond the pale of reason?"

■ "It ['good cause'] may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion." Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948).

The pleading upon which the summary judgment was partly based alleges as a good cause for not filing a claim sooner that: "(a) he did not know he had sustained an injury; and (b) he did not know until he was discharged that he had sustained any reduction in wage earning capacity."

In his affidavit made in reply to defendant's motion for summary judgment plaintiff equated the events of the night of December 9, 1965, and his later medical advice that he had some permanent heart damage with illness rather than injury, "* * * much in the same way as one would think of pneumonia being caused by overwork and exposure." Thus, he was not conscious that he had sustained an injury. We are thus presented with the narrow question as to whether a mistake in the cause of disability is no less a "good cause" for failure to file a claim than a mistake as to the extent of disability.

In his affidavit plaintiff also explained his reason for not knowing until he was discharged that he had sustained any reduction in wage earning capacity. Dr. Ashby made him to understand he was to avoid over-exertion, "* * * but I did not understand by the doctor's statement that I would have permanent damage, that I would not be qualified to work. As a matter of fact, I did return to work in February of 1965, pursuant to my doctor's instructions. In returning to work I went back on the same job for the same employer and for the same pay. The employer permitted me to work until the 9th day of January, 1966."

In the test of what a reasonably prudent person would have considered under the

same or similar circumstances we believe it is not unusual that a truck driver would have equated his experiences on the night of December 9, 1964, and subsequent events, with illness rather than injury. He had no sudden, sharp or excruciating pains in his chest; the doctor diagnosed his condition as a "heart spasm;" the doctor associated his physical condition to long hours of work and fatigue, as well as the activities of the night of December 9, 1964; he advised him to avoid long hours and fatigue; and he had no pain during the year he worked and no "flare ups."

A twenty-year old waitress fell while at work on November 29, 1937, and tore her uterus from its natural position, thus causing "flooding," pain and suffering. As a ground for "good cause" in not filing her claim until about ten months later, she alleged she did not know until August 1938 that her fall was the cause of her injuries. The Fort Worth Court of Civil Appeals in Hayes v. Commercial Standard Ins. Co., 140 S.W.2d 250 (Tex.Civ.App.-Fort Worth, 1940) held: "We believe that the instant suit, which is shown to have arisen over internal injuries affecting the procreative organs of a young woman, about twenty years of age, unmarried and untutored in diseases peculiar to women, under the circumstances shown in this record, distinguishes her case from those relied upon by the appellee. * * * "

The Supreme Court approved the "good cause" holding of the intermediate appellate court in a per curiam. Commercial Standard Ins. Co. v. Hayes, 135 Tex. 288, 142 S.W.2d 897 (1940).

Not being trained in medicine, we cannot say as a matter of law that plaintiff sustained an injury on the night of December 9, 1964. We have no information from the records as to what is entailed in a "heart spasm." It appears as reasonable to us from the record that the termination of plaintiff's job could have been due to an arteriosclerosis condition of a creeping nature found upon examination by the company doctors that would cause them to warn the company of arterial restrictions which could precipitate a heart attack in a truck driver. It is not difficult to envision the catastrophes that could result if a truck driver hauling 157 barrels of crude oil should suffer a disabling heart attack on a public road with traffic thereon. The record does not reveal what findings were made upon the physical examination which lead to termination of employment.

Our case does not fall within the factual patterns of the many comparatively recent cases by the Supreme Court of Texas which have held "good cause" was not shown as a matter of law,[1] but more nearly approximates the pattern of Hayes v. Commercial Standard Ins. Co., supra.

We also find ourselves unable to agree with the trial court's conclusion that: "If this were a case where plaintiff's doctor had not advised him of the permanent heart damage and permitted him to return to work and plaintiff had not thereafter had symptoms of a heart condition, there would be a different question presented."

What part of the heart was permanently damaged? Is the leaving of a scar permanent damage? What is the meaning of heart damage? Is any medical change from the normal damage? Where are the symptoms in the work record of plaintiff that showed a heart condition after February 1965? These questions are not answered in the record even though it shows that plaintiff voluntarily de-escalated his drive. The record shows he suffered no pains and had no symptoms of any heart attack from his resumption of work in February 1965 until his job was terminated a year later.

---

1. Texas Casualty Insurance Company v. Beasley, supra; Texas Employers Insurance Ass'n v. Hancox, 162 Tex. 565, 349 S.W.2d 102 (1961); Texas Employers' Insurance Association v. Leathers, 395 S.W.2d 601 (Tex.1965); Texas Employers' Insurance Association v. Brantley, 402 S.W.2d 140 (Tex.1966); Texas Employers' Ins. Ass'n v. Portley, supra.

When we consider the rule that the question of "good cause" may be determined against the plaintiff as a matter of law only when the evidence, construed most favorably to the plaintiff admits no other reasonable conclusion, Hawkins, supra, we are compelled to the finding that there are fact questions which should be answered. Especially is this true when we consider that the Supreme Court of Texas has admonished us that " * * * the general rule [is] that workmen's compensation acts are to be liberally construed to effectuate their beneficial purpose * * *." Mingus v. Wadley, 115 Tex. 551, 285 S.W. 1084 (1926).

Plaintiff by brief has said: "If this case is affirmed, it will be the first case where the workman lost even though he had no physical symptoms at all." We cannot vouch for that statement, but we do say we have found no Texas case law which contradicts the statement.

Believing there are fact issues that should be tried, the judgment summarily rendered is reversed and remanded for a trial on the merits.